We'll call our last case for the day, Jane Doe v. CARSProtection et al. Good morning, please the Court. My name is Gary Davis, and I'm here on behalf of the appellant, Jane Doe. I'd like to reserve two minutes for rebuttal. In this case, as the Court may recall, the employer, CARS, through its owner, Fred Cole, fired Ms. Doe on the day of the funeral for her unborn child. Her pregnancy had been terminated by an abortion a few days previous, and the employer has We filed this appeal because we believe the lower court exceeded its authority on summary judgment and improperly weighed conflicting evidence regarding whether or not Ms. Doe followed proper call-off procedures. We also filed this appeal because, looking at the testimony of Fred Cole independently, three different times during the case, it's clear that his testimony is in itself conflicting and therefore not worthy of belief. In regard to what the Court said, two times in its opinion it indicated its factual finding that there was not proper call-off. On page 10, it wrote of Ms. Doe's failure to make further phone calls to Cole as he On page 11, it wrote that plaintiff has not pointed to any evidence from which it could be inferred that she was fired for any reason other than failing to call in and abandoning her job. A review of the record shows quite a lot of evidence that Ms. Doe did, in fact, call in through her husband, which is permissible, on a regular basis and let her employer know what was going on. The record shows, through the testimony of Ms. Doe, through the testimony of her husband and through the testimony of the office manager, that on August 7, 2000, she learned while at work that there was a problem at 18 months of pregnancy that was found through blood tests, that she was asked to come in the following day for amniocentesis. She reported that to her employer that day and she remained that day. On August 9, the doctor was unable to do amniocentesis due to a lack of amniotic fluid, but a sonogram was done and further testing was necessary. Her husband called the employer, spoke to Mr. Cole, told Mr. Cole of the need for her to be off the following day, which was granted. On the following day, the 10th, there again was a need and she was referred to yet another specialist and there is testimony that, in fact, there was a call on that day and there was an indication on that day, which I believe was Thursday, that she was going to be having an abortion on Friday, August 11. Now, the 10th, there was an admission that all of the calls that took place during the relevant time period were from the cell phone, is that correct? That is correct, Your Honor. And the cell phone record didn't show that call? That is correct, Your Honor. So what do we do with that? Does that trump any testimony to the contrary? Well, I'm unaware of there being an irrebuttable presumption in the law that if a call does not appear on a bill, that a witness cannot testify that those calls were made. In this case, we have the testimony of Ms. Doe, the testimony of her husband, and we have the testimony of the employer that, in fact, a call was received by her that she spoke to Mr. Doe and that Mr. Doe was then connected to Fred Cole and he testified that he asked for a week's vacation for his wife the following week and that that was granted. And we also have the testimony that Cole then arranged for the lunchtime receptionist. That's correct. That would otherwise not have been necessary. Yes. And it wouldn't have been necessary had that call not been made. There's also testimony that on Friday when the procedure occurred that the office manager went in to see Mr. Cole thereafter and informed her that Ms. Doe had come through the procedure and that she was okay. If you look at the testimony of Mr. Cole, and there's really, I shouldn't say testimony, the statements of Mr. Cole that occurred during the course of the EEO procedure and also the litigation, his testimony is wholly inconsistent and contradictory. If you look at the position statement that Mr. Cole filed with the EEOC, he states that he was informed of Ms. Doe's pregnancy. He was aware of it. Then on August 7th, she informed him that her doctor called and she needed to get further testing. Then on August 8th, she called again and said she was having complications and again needed to see the doctor. He then described several days of what he refers to as job abandonment, followed by a call from her husband stating that she needed to end the pregnancy and that she would call after the procedure to tell them about returning to work. He then says two weeks went by with no contact, after which he laid her off. We know that the call to the employer was on the 7th, or to Ms. Doe was on the 7th, and that the procedure was on that Friday and that the funeral for the baby was the following Wednesday. And when were her things packed up? Was that the 16th? That was the date of the funeral. The office manager who was going to the funeral saw her things packed up on the day of the funeral, Ms. Doe, who states that she called following the funeral. In Mr. Cole's interview with Mr. Rodia, who was the EEOC investigator in this case, he stated that he never spoke to Ms. Doe and that her husband called only once. Interestingly enough, he says that was on Thursday, August 10th, and he told him that he would have to call back on Friday. He claims that the husband told her only that she was sick and he was not made aware of what was happening with her pregnancy. Completely inconsistent. In his deposition, Mr. Cole testified that he did not know that Ms. Doe's absence during the week of August the 8th was because of her pregnancy, or even that she was pregnant, that he didn't know that August 16th was the baby's funeral, or that she had terminated her pregnancy due to complications, that he only learned that information when he was served with the EEOC papers. He recalls what he says is maybe two calls with Ms. Doe's husband and it's unclear when they occurred. Based upon both the testimony that was provided by plaintiff in this case of the series of and the wholly contradictory testimony of Mr. Cole on three different occasions, we believe there's material issues of fact here that really need to be decided by trial and what we're asking the court to do is to remand this case back to the district court so that a trial could be held. Any questions? Thank you. We'll hear from you on rebuttal. Thank you. Good morning. My name is Robert J. Wayne. I am the attorney for the cross-appellant CARS Protection Plus. We are actually here on two matters today, the grant to summary judgment in favor of the district court to affirm and the cross-appeal related to vacating the order which placed this case under seal and with use of a pseudonym. As far as the summary judgment motion is concerned, what plaintiff has not argued and totally ignored from the district court's opinion is that this case is subject to the McDonnell Douglas pretext shifting analysis. Plaintiff has the burden of first showing that a prima facie case, that is, protected employee, adverse employment action, and the adverse employment action occurred under circumstances that give rise to an inference of discrimination. In order for them to prove their prima facie case, the plaintiff has consistently talked about Mr. Cole's reasons for discharging the plaintiff. That is not part of a prima facie case. That only comes into play after they've established their prima facie evidence and the employer gets to give his non-discriminatory reason. By compressing everything into the prima facie case, you totally do away with McDonnell Douglas burden shift. Now let's realistically look at what the plaintiff's prima facie case is. She had a medical problem related to her pregnancy. On her testimony on August 10, 2000, her husband called up Mr. Cole and said, Mr. Cole, my wife needs to terminate her pregnancy. Can she have August 11th off and the whole next week? Mr. Cole's response according to the plaintiff is, yes, you may. I'll see you in 10 days. The only other evidence plaintiff has pointed to that can possibly support their prima facie case is a comment made two months later, overheard by the plaintiff's sister-in-law. She did not hear the entire conversation, but a conversation between Olivia Babbage, Mr. Cole's secretary, and Mr. Cole, where Ms. Babbage asked Mr. Cole, why does the plaintiff want to keep losing her baby secret? And Mr. Cole says, because she doesn't want to take responsibility. But that's not part of the – I mean, that is direct evidence of discrimination, but that's not what McDonnell Douglas is all about. No, that is evidence – that is a very neutral statement. The plaintiff is claiming that Mr. Cole has some overarching discriminatory animus specifically related to abortion. That is the claim in this case. It's not pregnancy discrimination. It's not that she was mistreated up until the time that – before she knew she had to terminate the pregnancy. The plaintiff says very clearly in the brief, Mr. Cole found abortion immoral and wrong, and that's why she terminated her. So the comment after the fact, which is removed from the decision-making process and is a fairly neutral statement, says she didn't want to take responsibility. That doesn't show discriminatory animus related to – doesn't show discriminatory animus related to abortion. So there is no evidence here supporting a prima facie case. So we never even get to Mr. Cole's testimony after the fact or Carr's reason for discharging the plaintiff. And that's what the district court found. The plaintiff, although they talk about it in the brief, makes no argument that similarly situated employees, non-protected employees, were treated better, and there's no evidence in the record to support that. I think there is evidence in there about the different individuals who – But there's no evidence, Your Honor, in the record saying that Ms. – that the plaintiff was not paid for the week she was off that she had permission to be off with. They never say that. In fact – The evidence was that she was fired on the Wednesday. On the Wednesday, but that's bootstrap because you have the first week off. Carr's has never said that we gave her Thursday – Carr said you can have the following week off. Carr's has not said that you had to call in August 11th, August 14th, August 15th, and August 16th. The call-in relates to the first days, and the plaintiff doesn't complain about that. On August 8th, the husband called in, told Carr it's nothing more than she needs more testing. Don't know what's up. Mr. Cole said, call me tomorrow, let me know what's up. Not a problem. Wednesday the 9th, get the same call. Plaintiff, they don't know what's going on. The testimony is very clear. No discussion of what the problem was with anybody. Not just the employer. August 9th comes along. She needs more testing. We don't know what the problem is. Mr. Cole says, okay, call me tomorrow, let me know what's up. August 10th, the day comes. Plaintiff claims I called. Mr. Cole says, and Carr says, you didn't call. Here's our phone records to prove it. Well, it's a fact issue. Looking at the evidence in the light most favorable to the plaintiff, which must be done on summary judgment, there was a call. Okay, there is a call, but the response to that call was, yes, you can have the following week off and you don't need to call that whole week. So that doesn't show discrimination. That doesn't establish the prima facie case. All right, but how about the evidence as to what happened the next week? Once done it, wanted off for the funeral of the baby. The case law is that's pure supposition. There is no evidence that discriminatory animus. But there doesn't have to be. Not direct. It can't just be because the plaintiff says it must have been discrimination, that that is sufficient to establish discrimination. You must have something. It doesn't establish. We're talking about a way to get past summary judgment. Right, but there must be. That's what happened to Donald Douglas. Right. She's proven that something different happened to her. Something different happened to her than happens to other people. Then employer says legitimate reason, she didn't call off. And then she says inconsistencies, implausibilities, and therefore no summary judgment. She can go to trial. That's all it does. It gets her passed out. That is right, but there has to be. It doesn't have to be direct evidence. Exactly. But there has to be some evidence that a rational fact finder, you can conclude that there was discrimination involved here. The fact that there is nothing. But that comes at the implausibility stage. Inconsistency and the implausibility such that discrimination may have been at the heart of this. On the prima facie case side, you must show you are raising a presumption that discrimination occurred at the prima facie case occurred. No, I mean, I don't. That's what the district court said, and that's what the case law. Well, yes, the district court required pretext plus. The district court did say we need pretext plus. Well, the district court said there was no prima facie case because the prima facie case is some basis to infer. But we're reviewing the district court. I understand, and that's consistent, and that was our position in our brief, and that's consistent with the case law. That's what the prima facie case is. Now, as far as the pretext, even though, first of all, it is important to note regarding the employer's stated reason for discharge, they have not really challenged employer's stated reason for discharge. They have challenged the timeline and description of how the events occurred. Mr. Cole told the EEOC in its position statement, in the phone interview with Mr. Rodilla, and in this case, that plaintiff failed to keep him informed of her absence, and that is why she was discharged. That there was a time period came where she needed to tell him what she was going to do, and she failed to do it. That's in the position statement. That's in the interview notes from Mr. Rodilla, and that's what we have maintained in this case. So the reason for the discharge has never changed. Well, except for the reason for the discharge, I mean, there is evidence here that he made arrangements for a different receptionist for the next week. So that would point toward the fact that, in fact, he had been advised that she wasn't going to be in. So, I mean, there's issues of fact regarding this, so the legitimacy of the reason is therefore undermined. If I may, Your Honor, the fact that he arranged for somebody to cover or asked about covering the receptionist is not evidence that he gave her time off and she called. It is neutral evidence. The fact is he had an employee who was covering something and has not appeared to work. He never told Leona Dunnett that he gave the plaintiff time off from work. What he said is, do you have coverage for that position for the next week? That is only consistent with his concern that the plaintiff might not be there. For whatever reason, that's the problem with this case. There is nothing in this case that says Mr. Cole was so anti-abortion, and there's another issue as to whether or not abortion is the correct term in this case, but so anti-abortion that he fired her for that reason. Well, Mr. Cole, the testimony is universal. He's never said anything about abortion to anybody. Even in Reeves, where they said if you disprove the employer's proffered reason, that can be enough to show pretext. It indicated that in weak cases, and this is the weakest of cases, it might not be enough. Just because you show pretext, and I do not believe pretext has been shown here, just because you show pretext in a very weak case might not be sufficient. In fact, this court in front of us, and Reeves doesn't change that, says it's a very high burden the plaintiff has to show that discrimination, at the end of the day the question is, discrimination had to be the reason why this action occurred. Of course, that is at the end of the day. All you're doing in McDonnell-Douglas here is getting past summary judgment, allowing her to have that pass, go, card. But if you look at all the evidence in this case, because the plaintiff has the burden of coming forward with this evidence, can a rational jury reasonably conclude Mr. Cole had such animus related to abortions that he discharged her for that reason? And the record is devoid of that. Well, that's not for us to determine today. We look at the implausibilities. I mean, it's very difficult. I mean, he said a lot of different things that didn't help from the consistency standpoint. Wouldn't you agree? I would. He didn't know. He really wasn't aware of the abortion and the funeral issue. I mean, things that you would think would be in someone's mind. Well, except part of the issue here is his distinction. And, yes, there are inconsistencies. Part of the issue is the distinction between what the plaintiff told him, which is nothing, because the plaintiff didn't even know they were going to have a funeral until the following Monday, and what he hears from interoffice statements. Because since the plaintiff never told Mr. Cole we're having a funeral, prior to August 10th, the plaintiff never told Mr. Cole exactly what. I'm not saying it doesn't help himself, but the fact is his stated reasons throughout was the same. You were supposed to ask for time off. You didn't ask for the time off. You abandoned your job. That has been consistent. The timeline in the explanation is granted, but that's not what the case law says. What is the stated reason? If I may, I see I'm running out of time. If I can quickly get to the cross-appeal. Yes, please do. There's no Third Circuit case law on this, but the judge here both allowed the plaintiff to proceed in pseudonym and sealed the case. As far as sealing the cases, you must show a specific harm necessary to seal the case, and there was no harm here. As far as the balancing issues, and I'm trying to speed this all up, there really is no testimony. He granted the motion. First of all, he dealt both issues as one issue. Then he granted the motion initially on an unverified motion with no affidavit or anything from the plaintiff. Then he treated Kars' motion for reconsideration as a motion to disclose the name of the plaintiff, putting the burden on Kars to prove the necessity of this, as opposed to the other way around. The only thing the judge said after hearing the testimony is plaintiff preferred to keep it, yet the testimony was plaintiff would prefer to keep this confidential. She's a private person, she's not a public person, and he assumed there was a risk. The case law is clear that is not enough to grant that protective order. If the court has any further questions, I see my time's up. No, I think we're fine. Thank you. Thank you. Rebuttal? Just briefly, temporal proximity is certainly a factor here, and there's evidence that my client is a member of a protected class, that she suffered a discharge from her employment very quickly after she became that very specific member of this protected class under unusual circumstances, and that the stated reason for the discharge, there's good reasons to believe that it's bogus in this case. I would direct the court's attention to St. Mary's v. Hicks from the U.S. Supreme Court and also Reeves v. Sanderson. I can give you the sites, though I expect you're very familiar with them. Both those cases standing for the proposition that, in fact, there can be a jury or fact finder can find it if the stated reason is pretext that there was, in fact, discrimination. As this court knows, there's very rarely direct evidence of discrimination. In this case, we have a little bit because we have the statement a couple of months later. In regard to the pseudonym and under seal issues... Although the statement a couple of months later, she didn't want to take responsibility, so she didn't want people to know. That isn't necessarily anti-abortion, is it? Not necessarily, but it could be. It could be considered. It might be interpreted that way. Certainly the office manager interpreted it that way, and she's the one who heard the tone of the comment and testified to it. In regard to the pseudonym and the under seal, Judge Cogill took judicial notice, actually without my even asking, that, in fact, there were dangers to the plaintiff if, in fact, this information was released. I believe, given the events of the last several years, that that was appropriate. How we could possibly prove specific danger to this plaintiff, frankly, I'm at a loss as to how we could have done that. Thank you. Thank you. The case was well argued. We'll take it under advisement and ask the court to move it. Thank you. Rebuttal. Mr. Williams. Thank you, Your Honor. Counsel just told this court that there's no difference between merits and constitutional claims. I quote from the decision to deny. Based on our precedent in staining, we conclude that we have jurisdiction to review Mackey's claim of discrimination because a discrimination claim under a mixed motive theory does not necessarily require consideration of the merits of a security clearance decision. There is a difference. We can avoid the political question of whether something affects national security, whether there is a sufficient predictive judgment, while still analyzing for constitutional defect to make sure that the constitutionally prohibited reasons do not play a part in that process. And this is all about the process. This whole case is about the process. When Defendant Kupfer filed his certification on May 19th, he revoked Dr. Elgin's security clearance and said at the same time, we're not telling you why, we're not giving you any process. It's all about the process. Even that revocation of the security clearance is about the process. So even if we accept the process. You are saying, again, it's all about the process. Earlier, though, you said you'd really like to know the reasons. Mackie, we also said that while a certain review was appropriate, we said we cannot question that.